ROBERT WAGGENER - SBN: 118450
LAW OFFICE OF ROBERT WAGGENER
214 Duboce Avenue
San Francisco, California 94103
Phone:       (415) 431-4500
Fax:         (415) 255-8631
E-Mail:      rwlaw@mindspring.com

Attorney for Defendant GALE JOSEPH YOUNG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA | No. CR08 0502 MMC |
|---|---|
| Plaintiff, | **DEFENDANT GALE JOSEPH YOUNG'S SUPPLEMENTAL SENTENCING MEMORANDUM** |
| v. | |
| GALE JOSEPH YOUNG | Date: February 23, 2012 |
| Defendant. | Time: 9:00 a.m. |
| | Crtrm: 7 (Hon. Maxine Chesney) |

## INTRODUCTION

Defendant Gale Joseph Young presents this supplemental memorandum regarding his sentencing, following up on the issues discussed at the previous hearing on January 18, 2012.

### I.

### ISSUES REGARDING JAMES ALLEN JORDAN

Apparently, Mr. Jordan has absconded from his supervised release responsibilities and is a fugitive. The government has indicated that it is unable to subpoena Mr. Jordan and "may not be able to produce him as a witness for the evidentiary hearing". The Court had earlier indicated it would like to hear testimony from Mr. Jordan and the defense recently requested that he be produced for the sentencing hearing. The docket for Mr. Jordan's case (attached hereto as

Exhibit A) does not illuminate his current status because of the volume of sealed documents. Mr. Jordan was sentenced by Judge Breyer on December 14, 2010, and was released to go to a halfway house (Judgment and Commitment attached hereto as Exhibit B), and it appears that he either never showed up or left once he checked in.

Defense counsel thought it was clear after the last hearing that the transcript of Mr. Jordan's testimony would be ordered by the government for purposes of addressing the relevant issues of Mr. Young's sentencing. It is now clear that the government interpreted the request for "the transcript" of Mr. Jordan's testimony to mean just the excerpts of Mr. Jordan's testimony on the "Sugarfoot" threat issue (see Exhibit A to Government's Supplemental Sentencing Memorandum). Upon discovery of this misunderstanding of the parties, the defense has requested the entire transcript of the Jordan testimony and it is expected to be completed and made available on the day this pleading is filed. The defense's position is that the entire transcript is necessary for the sentencing proceeding record because Mr. Jordan's credibility is a key issue as to any guideline adjustment for obstruction of justice, and Mr. Jordan was thoroughly impeached on many issues during the course of his trial testimony. It is abundantly clear that the government does not believe Mr. Jordan as to various subjects.

## II.

### OBJECTION TO GOVERNMENT'S REQUEST FOR UPWARD VARIANCE BASED ON LOCAL RULES.

The draft PSR in this case was distributed to the parties on December 19, 2011. The draft PSR did not contain any adjustment for obstruction of justice pursuant to U.S.S.G. §3C1.1. In its one-page letter to the United States Probation Officer Cheryl Simone regarding the draft PSR dated December 22, 2011, the government made no mention of Mr. Young deserving a guideline adjustment for obstruction of justice (see letter attached hereto as Exhibit C). Only in its UNITED STATES' SENTENCING MEMORANDUM & REQUEST FOR UPWARD VARIANCE filed on January 17, 2012, did the government make its request for the obstruction of justice adjustment (Docket No. 229).

Local Rule 32-4 (Proposed Presentence Report) requires the government and defense counsel, once in receipt of the Proposed Presentence Report, to "identify and address any objections to the factual statements or guideline computations in the proposed report". (32-4(c)(2)). As to any objection, the party must "state any variation the party contends should be made from the guideline computation recommended in the proposed presentence report (32-4(c)(2)(C)). The clear purpose of this rule is to allow the probation officer to properly and timely evaluate any such objection and address the issue in the Final PSR. Here, the government has circumvented this legitimate process and the defense submits that the proper remedy is for the Court to reject the government's tardy request for an upward variance.

## III.

## THE OBSTRUCTION OF JUSTICE ISSUE.

A.  **Standard of Proof**

It is clear that the government has the burden of proof as to sentencing factors and that the general standard is preponderance of the evidence, *United States v. Restreppo*, 946 F2d 654, 661 (9th Cir. 1991)(*en banc*) cert. denied, 503 U.S. 961 (1992). Here, the government is not only requesting a two-level enhancement for obstruction of justice, but is also asking for what amounts to at least an additional five-level enhancement/variance in order to get to a ten-year sentence.[1] Under these circumstances, defendant submits that a clear and convincing standard is appropriate. *See, e.g., United States v. Hopper*, 177 F3d 824, 833 (9th Cir. 1999), *United States v. Romero-Rendon*, 220 F3d 1159, 1161 (9th Cir. 2000); *United States v. Gonzalez*, 561 F3d 1036, 1046 (9th Cir. 2009).

When the Court is considering departing from the guidelines for reasons not identified in the final PSR, the appropriate procedure is to schedule an evidentiary hearing. *See*, Local Rule 32-5(a). *See, also*, Federal Rules of Criminal Procedure Rule 32(i), U.S.S.G. §6A1.3. This Court

---

[1] With a Criminal History Category V, the PSR guideline calculation for Mr. Young at an Offense Level 18 is 51-63 months. An obstruction of justice enhancement would bring the range to 63-78 months, and to get a 120-month sentence would require getting up to an Offense Level 25 with a guideline range of 100-125 months.

1  has scheduled such an evidentiary hearing to include the testimony of James Jordan. The
2  defendant has also requested the government to produce Mr. Jordan for the evidentiary hearing in
3  order to challenge the guideline variances requested by the government and further question him.
4  Mr. Jordan is a fugitive and cannot be at the evidentiary hearing, so a meaningful hearing cannot
5  be conducted as to issues relating to Jordan, except for the fall back reliance on the trial testimony
6  of Mr. Jordan. Defendant submits that the unavailability of Mr. Jordan impinges on the
7  defendant's due process rights to effectively contest the suggested enhancements and should
8  result in a finding that the government cannot meet its burden of proof.

**B.    The Evidence as to Obstruction of Justice**

The testimony of Marshal Swanson and an excerpt of the trial testimony of Mr. Jordan have been submitted by the government to establish their burden for the Court to make a finding under U.S.S.G. §3C1.1. The government contends that the testimony of the two on the subject of a threat is consistent, and that is simply not true. Marshal Swanson did not hear any threat. He simply heard Mr. Young say he would see Mr. Jordan on Monday, which was indeed true. (The date of the conversation was October 14, 2011-- a Friday -- and Mr. Young's trial was to commence the following Monday.) Obviously the Marshal's testimony contradicts Mr. Jordan's testimony that Mr. Young would see him "one day". The Marshal also contradicted Mr. Jordan in terms of hearing a singsong "Jordan" as the Marshal, Mr. Jordan, and an Alameda County deputy sheriff were walking down the hallway at Glenn Dyer Jail.

Marshal Swanson testified that as he lead Mr. Jordan down the jail hallway, he saw Mr. Young, but did not see any hand gesture. The testimony of Mr. Jordan is that as Mr. Young made his comment, Mr. Young pointed a finger at him (like a pistol) and winked, and the government and the Court have focused on that gesture. However, this evidence of a gesture has to be put in some context to appreciate or evaluate its significance. First of all, pointing at someone and winking is not an unusual gesture when saying something to a person. Sticking your finger out and pointing does not automatically equate to mimicking a pistol. Mr. Jordan did not describe any action other than a point; in other words, there was no trigger-type movement or

1  other action consistent with operating a firearm. Also, it has to be appreciated that Mr. Jordan's
2  observation took place as he was glancing to his left while walking down a hallway and looking
3  through a small window described by Marshal Swanson as six inches wide and eighteen inches
4  high. The innocuous nature of the gesture and the limited time of observation discount its
5  evidentiary significance.

6      Defendant contends that under the circumstances, the testimony as to what happened in
7  the brief encounter cannot reasonably be construed as a threat, and was too ambiguous to warrant
8  a two-level departure for obstruction of justice. Mr. Jordan obviously testified at the trial that in
9  his mind, he thought it was a threat, but that is not the standard. The case law talks about the
10 intent of the person engaging in the conduct, whether an action can be reasonably construed as a
11 threat, and whether a common gesture suggesting an innocent purpose is sufficiently threatening
12 to qualify as obstruction. *United States v. Deta*, 33 F3d 1179, 1189-1190 (9th Cir. 1992). Based
13 on the trial transcript record and without the further opportunity to question Mr. Jordan, the
14 defendant submits that the government has not met its burden as to obstruction.

15     What the case law further talks about is sufficient indicia of the reliability of the evidence
16 and the credibility of witnesses. *United States v. Jackson, supra,*, *United States v. Scheele*, 231
17 F3d 492, 496 (9th Cir. 2000). *See, also, United States v. McGowan*, No. 10-50284) 2012 U.S.
18 App. LEXIS 1424, 13-17 (9th Cir. January 26. 2012). The Court heard the entire testimony of
19 Mr. Jordan and hopefully the entire transcript of that testimony will be available at the hearing of
20 this matter. The fugitive Mr. Jordan was simply not a credible person and he fit the classic mold
21 of a jailhouse informant. *See, United States v. McGowan, supra; Gonzalez v. Wong*, No. 08-
22 99025, 2011 U.S. App. LEXIS 24191, at 33-37 (9th Cir. December 7, 2011) (the disturbing ease
23 and frequency with which jailhouse informants provided false testimony). With his credibility
24 already compromised on the specific conduct by the testimony of Marshal Swanson, there is
25 simply not a sufficient basis to qualify for an obstruction enhancement.

26
27
28

DEFENDANT YOUNG'S SUPPLEMENTAL
SENTENCING MEMORANDUM     -5-

## IV.

## **18 U.S.C. §3553 FACTORS REGARDING THE DEFENDANT.**

At the last hearing in this case, the Court commented on the ring of truth to Mr. Jordan's claim that Mr. Young told him that the only "hustle" he knew was drugs, inferring that Mr. Young's background was going to lead him right back to the drug trade upon his release. The exact quote on this issue, taken from an FBI 302 interview of Mr. Jordan on July 14, 2011 regarding a conversation Mr. Jordan supposedly had with Mr. Young is:

> When they spoke about their pending court cases, JORDAN advised YOUNG to take a plea deal and go home, as he understood that YOUNG could be released soon thereafter if he took a plea deal. When Jordan asked why YOUNG did not take a plea deal, YOUNG stated that he did not want probation and that's why he could not take a plea deal. YOUNG stated that he would still need to "hustle" and drugs were "my hustle" and that was how he made his money. JORDAN took this to mean that he still would need to sell drugs to make an income, and being on probation could make him subject to search conditions.

See Exhibit B to UNITED STATES' SENTENCING MEMORANDUM & REQEQUEST FOR UPWARD VARIANCE.

First of all, the comments above and the overall record as to Mr. Jordan's credibility fully apply to this statement given to agent Bergh by Mr. Jordan. Second, the statement is internally inconsistent as to reality. In the settlement conferences that took place in this case, Mr. Young was never offered a deal where he was going to be released soon thereafter, and the government well knows that is the case because they refused to make any such deal. Beyond that, Mr. Young is no dummy. Even if the government were to outright dismiss the present case, Mr. Young would still be on supervised release for his prior case before Judge Alsup and would be subject to search conditions and other conditions of his prior sentence, and that is something that Mr. Young well understands. It makes no sense that Mr.Young would make this statement to Mr. Jordan. The conversation was invented by Mr. Jordan, consistent with the machinations of a jailhouse informant. Mr. Jordan may well have been made aware that Mr. Young had gone to court for a settlement conference because court house trips are common knowledge with a pod of inmates, but he made up the rest of the attributed statement to help himself and to hurt Mr. Young.

DEFENDANT YOUNG'S SUPPLEMENTAL
SENTENCING MEMORANDUM                -6-

The Court is well aware of Mr. Young's criminal record and his prior involvement in the drug trade, and that may well have contributed to the Court's attraction to the "hustle" quote. The fact of the matter, however, is that while in his long period of time in custody with the Bureau of Prisons Mr. Young has done everything he could possibly do to acquire new skills in preparation for his eventual release. While in custody, Mr. Young has received training in janitorial, landscaping, heating and air conditioning, carpentry, and culinary (food service) skills, largely through hands on experience. When he was recently out at FDC Dublin before his current stint at North County Jail, the kitchen had been closed. With four other inmates, Mr. Young participated in remodeling the entire kitchen and bringing it up to safety regulation standards. Once the kitchen was completed Mr. Young worked his way up to a position of head cook, preparing meals for the entire jail, including staff. He had never had any prior cooking experience and he worked his way up to the position in six weeks, eventually working seven days a week between 10:00 a.m. and 7:00 p.m.

Job training and experience while in custody is certainly a lot different than work outside the walls and it is not being claimed that Mr. Young is automatically ready for the job market. The point is that Mr. Young has other "hustles" and employment possibilities. He is going to need some help and assistance when released and that is why the suggestion was made that he be confined at his mother's home with a GPS monitor and allowed to pursue further job training and placement and drug and alcohol counseling and treatment, either by means of serving the remainder of a sentence imposed by the court or as a condition of his supervised release. The Court implied at the last hearing that Mr. Young might not be ready for release and that he needed more training for his transition back to society. As noted above, Mr. Young has vigorously sought out the training available to him in the time he has already served and it is submitted that sending him back to a prison environment is not necessary or consistent with §3553 factors. An appropriate sentence can be fashioned such that Mr. Young no longer has to be warehoused in a federal prison or local jail.

As noted in earlier filings Mr. Young's goal is to get involved in the trucking industry. He has family members in that business, he has researched the job field, and the United States Probation office supports and encourages that kind of training for ex-offenders under their supervision. There are two separate trucking schools near Mr. Young's mother's house in San Leandro and she and her son have gone through the requirements for entry into such schools and provided the information to Ms. Simone. In addition, Mr. Young and his mother have researched ex-offender transition programs in the East Bay and resources available which they have also discussed with Ms. Simone. Mr. Young is going to get out of custody and he should get out of custody and it is submitted that his time behind bars should be concluded now, with all the suggested stringent conditions for serving out the remainder of his sentence and on his supervised release to be imposed by the court.

## V.

## APPLICATION OF THE FAIR SENTENCING ACT.

The parties agree that the Fair Sentencing Act should be applied retroactively in this case and the objection by United States Probation is a general policy matter. The government conceded the issue before the second trial and the Court should apply the newer, fairer law. Mr. Young is well aware that the United States Supreme Court has decided to take up the issue of retroactivity, and that if he files an appeal in this case he faces a potential risk down the road of an adverse ruling on the issue, including the possibility of a ten year mandatory minimum sentence. Mr. Young's decision to file an appeal or even abandon an appeal is for a different day and the Court should now sentence Mr. Young and let him make his decision in the future as to his constitutional right to appeal.

## CONCLUSION

For the foregoing reasons, Defendant requests this Court to impose the sentence suggested in defendant's original sentencing memorandum, with conditions of mental health counseling, alcohol abuse counseling and/or treatment, and vocational training, along with other

///

1 | standard conditions, either as part of a remaining sentencing or as part of supervised release.

3 | Dated: February 21, 2012        Respectfully submitted,

```
                                    /s/
                               ROBERT WAGGENER
                               Attorney for Defendant
                               GALE JOSEPH YOUNG
```